**JOSE N. HERNANDEZ, Plaintiff**

**v.**

**SERGIO ALCORTA, TRISH BURNS, STEVEN KOLODZIEJCZYK,
MARY ANN E. DAWN, FIP. Ltd., SCOTT McGREGOR,
CARA McGREGOR, MURRAY BART PIERCE,
CORA LEE PIERCE, EDMUND D. McCARTER and
ERNEST C. WESTBERRY, Defendants**

Civil No. 548/1999

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

October 8, 2003

GEORGE MARSHALL MILLER, ESQ., St. Thomas, VI, *Attorney for Plaintiff*

HERBERT MURIEL, ESQ., Sugar Estate, St. Thomas, VI, *Attorney for Defendant*

HODGE, *Judge*

## MEMORANDUM OPINION

### (October 8, 2003)

Before the Court is Plaintiff Jose Hernandez' ("Plaintiff") Memorandum of Law regarding service by publication, seeking to have the default of Defendants Trish Burns, Steven Kolodziejczyk, Mary Ann E. Dawn, FIP Ltd., Scott McGregor, Cara McGregor, Murray Bart Pierce, Cora Lee Pierce, Edmund D. McCarter, and Ernest C. Westberry ("Defendants") entered for failure to plead to the complaint herein. They were all served with process by publication in the *St. Thomas Source* internet newspaper. On April 11, 2003, the Court ordered Plaintiff to brief the issue of whether the *St. Thomas Source* (the "*Source*") internet newspaper is a "newspaper of general circulation" for purposes of the Virgin Islands statute governing service of process by publication. V.I. CODE ANN. Tit. 5 § 112 (1997 & Supp. 2002). Plaintiff contends that service of process on Defendants is valid because the *Source* qualifies as a newspaper of general circulation. For the reasons set forth herein, the Court agrees.

### FACTS

In the wake of Hurricane Marilyn in September 1995, Plaintiff, who owns a heavy equipment business, entered into an agreement with Defendant Sergio Alcorta ("Alcorta") to use equipment to raze damaged buildings and remove debris at the Tropaco Point Condominium Complex. Plaintiff filed suit to recover monies he alleges Alcorta owed him for the clean-up work. As the case proceeded, it was discovered that Alcorta had acted as the agent for all the condominium owners at Tropaco Point. Plaintiff therefore moved to amend his complaint to include those owners as defendants in the action. Alcorta did not object, and on July 23, 2001, Plaintiff's motion was granted. Subsequently, Plaintiff moved to serve Defendants by publication, stating that after a duly diligent search, they could not be located in the Virgin Islands. The motion was granted on February 24, 2003, and Plaintiff was given leave to serve Defendants by publication in a newspaper of general circulation

pursuant to 5 V.I.C. § 112. In April 2003, Plaintiff provided an affidavit stating that the summons was published for four consecutive weeks in the *Source*, thereby satisfying the statutory requirements.[1]

## DISCUSSION

■ Under Virgin Islands Law, service of process can be effected by publication when a summons cannot be served according to Rule 4 of the Federal Rules of Civil Procedure and the defendant cannot be found in the Virgin Islands after a duly diligent search. 5 V.I.C. § 112(a). The statute requires that the publication appear "in a newspaper of general circulation in a jurisdiction designated by the court as the most likely to give notice to the person to be served for such length of time as may be deemed reasonable, not less than four weeks." 5 V.I.C. § 112(c). The jurisdiction designated by the court in this case was the United States Virgin Islands, specifically, the island of St. Thomas.

Plaintiff argues that the *Source*, which is published solely on the internet, is a newspaper of general circulation because (1) it has been designated as such by various agencies in the local and federal government, (2) the Court has the power to designate internet publications as newspapers of general circulation, and (3) a notice printed on paper is not inherently more likely to reach the intended recipient than one published on the internet. (Pl.'s Mem. of Law Re Publication of Process at 3-5.)[2]

Plaintiff's initial argument appears compelling at first blush; however, upon closer inspection, the Court does not find it persuasive. Plaintiff argues that the *Source* must be considered a newspaper of general circulation under the statute because it has been designated as such by members of the executive branch of the Territorial Government and other persons with positions of authority in the local and federal governments.[3]

---

[1] The name of the company publishing the newspaper is V.I. Source, Inc. *St. Thomas Source* is the version for the island of St. Thomas.

[2] The Court raised the issue of publication in the *Source sua sponte* after being advised that the *Source* was not listed by the Clerks' Office as a newspaper of general circulation.

[3] Specifically, Plaintiff lists the following individuals or entities: (1) the Attorney General of the Virgin Islands, (2) the Director of the Industrial Development Commission, (3) the Assistant Chief Executive Officer of the V.I. Economic Development Commission, (4) the Commissioner of Property and Procurement, (5) an employee

Plaintiff provides numerous documents verifying that the *Source* has been so designated by these persons. A letter from Attorney General Iver Stridiron to Lieutenant Governor Gerard Luz James III states in relevant part:

> "By letter dated January 18, 2001, the Commissioner of Property and Procurement officially designated the Source as a newspaper eligible to publish official notices ... We understand that you have some concerns in advertising in the Source ... No one can contest that the Source is widely circulated throughout the Virgin Islands ... Further, we note that Commissioner Biggs' interpretation of Section 251 and his determination that the government notices may properly be published in the Source are entitled to great weight ... As Attorney General I concur in the decision by Commissioner Biggs as legally determinative of the issue. I have, for example, instructed my staff to utilize the Source and all other news sources whenever practical." (Pl.'s Mem. of Law Re Publication of Process at Ex. A) (referencing 31 V.I.C. § 251).

Plaintiff cites the statements by the Attorney General and the Commissioner of Property and Procurement as incontrovertible evidence that the *Source* is a newspaper of general circulation. The flaw in this argument is that notices to the public, of the kind routinely published by the government, and to which the Attorney General and Commissioner Biggs refer, are significantly different in nature from notice to a defendant that a case has been filed against her. The former are designed to make the public aware of a particular proceeding they are entitled to participate in or an opportunity to which they may respond.[4] The latter serves a much more substantial legal function, namely, to allow service of process on a defendant, without which a court cannot properly achieve personal jurisdiction. It is this distinction that undermines Plaintiff's argument. Just because the *Source* qualifies as a newspaper of general

---

of the Third Circuit Court of Appeals Office of the Circuit Executive, and (6) the United States Postal Service.

[4] The examples Plaintiff cites are representative. They include a notice that Virgin Islands businesses may submit a request to be included on the list of approved suppliers for items to be procured by the Industrial Development Commission, and a notice of reappointment of a Federal Public Defender. (Pl.'s Mem. of Law Re Publication of Process at Ex. A.)

circulation for the purpose of administrative notices does not automatically mean it qualifies for purposes of service of process by publication. This is particularly true given that administrative legal notices are directed to persons presumed to be present in the Territory and service by publication is not allowed under the statute until there has been a threshold showing that the target persons cannot be located in the Territory.

Plaintiff's second argument also lacks merit. He argues that "[t]he Territorial Court has the inherent power to designate Internet publications as 'newspapers of general circulation' if it so chooses," citing as authority 4 V.I.C. § 243(8), which allows the Court to "amend and control its process and orders so as to make them conformable to law and justice." The Court is not persuaded that a plain reading of this statute confers any such authority. Furthermore, Plaintiff's assertion is in opposition to relevant case law. In support of another argument, Plaintiff cites *In Re: Media Ventures (VI) Inc., d/b/a Virgin Islands Business Journal*, 30 V.I. 43 (Terr. Ct. St. T. & St. J. 1994). This case is persuasive authority with respect to the issue of whether the Court can designate a newspaper as one of general circulation. The *Media Ventures* Court held that: "We do not live in a governmental system in which a court has to grant permission to a newspaper to publish legal Notices or Summons. Indeed, if this Court had the authority to grant permission, it would have the concomitant authority to deny permission ... After analysis of applicable law, this Court is satisfied that it does not have that authority." *Id.* at 46.

The ruling in *Media Ventures*, however, does not preclude the Court from addressing the issue in this case. The question in *Media Ventures* was whether the petitioning newspaper had to get permission from the Court to publish legal notices. *Media Ventures* at 43. That is not the case in this instance, where the question is whether the particular form of the newspaper distinguishes it from a traditional newspaper to such a degree it cannot be used to fulfill the statutory requirements.[5] The

---

[5] *Media Ventures* is further distinguished from the present case insofar as the case was dismissed because there was no cognizable case or controversy from which the question emerged. The court determined that the Petitioner was merely seeking an advisory opinion from the Court on whether it could publish legal notices and therefore, by extension, be considered a newspaper of general circulation. *Media Ventures* at 44-45.

Court therefore cannot simply designate a newspaper as one of general circulation, as Plaintiff suggests, but it may make the necessary inquiries to determine whether a particular newspaper's characteristics are sufficient for substituted service by publication.

Plaintiff's third argument is compelling. Incorporating by reference an affidavit by the publisher of the *Source*, Plaintiff contends that not only is an internet newspaper not a deficient method for disseminating notices to the public, it is in fact superior to printed versions in many ways. The stated reasons for this superiority are (1) that internet newspapers reach a greater number of people because they are free and available 24 hours per day, (2) that an internet newspaper's audience potentially extends far beyond the confines of its original location, (3) that persons reading an internet newspaper can easily forward information contained therein to others, and (4) that legal notices published in internet newspapers are not relegated to a section in the back pages, but are immediately accessible through the home page.

The Court finds all these arguments persuasive. Plaintiff wishes to serve the defendants by publication because they cannot be located within the Virgin Islands. Because it cannot be determined where they are located, and therefore a better publication venue cannot be determined, the Court is faced with the seemingly paradoxical situation of having to order, under the parameters of the statute, that publication take place in the very venue where the defendants have been sought but not located. However, the theory behind allowing such local publication for persons not located in the Territory is that relatives, friends, and acquaintances will read the notice and pass on that information. It is therefore incumbent upon the Court to ensure that the local publication is an effective vehicle for furthering this purpose.

The continuous availability of the *Source* militates in favor of accepting its use for substitute service of process. Once a notice is posted in the *Source*, it appears continuously. A notice posted for the requisite four-week period thus appears every day for four weeks. This accessibility stands in stark contrast to hard copy newspapers, where the notice only appears one day a week for four weeks, and it creates a substantially greater likelihood that a defendant will see a summons intended for her. Furthermore, the fact that the *Source* is free also increases the chances a defendant will be reached. While not everyone has internet access in the home, public libraries commonly offer free

310

internet access. Additionally, the Court notes that just because a defendant does not have access to a computer does not mean he instead reads the newspaper. The potentially unlimited reach of the *Source* as an internet paper also provides an opportunity for those outside this jurisdiction to have access to it. This is particularly true given that the defendants in this case were property owners on St. Thomas, and as such may have a continuing interest in local news, making them likely to seek out internet news sources from the Virgin Islands. For someone located off the island of St. Thomas, this would be a much easier means of keeping abreast of Virgin Islands news than would purchasing a printed newspaper. Given how common computer use is today, an internet newspaper casts a wide readership net, and a defendant could learn of a pending case against him by having someone who has read the notice alert him. Indeed, such a person could forward the notice directly to him. Forwarding takes seconds on the internet, whereas mailing a print version takes significantly longer and requires the purchase of a stamp. Finally, it is true that legal notices in the *Source* can be accessed merely by clicking on the appropriate link on the paper's home page. Readers are therefore not required to locate the section reserved for the notices in the back of most newspapers and then decipher what is often considerably smaller print than normal.

In reviewing relevant case law, the Court notes that it is now common in other jurisdictions to recognize internet newspapers as newspapers of general circulation. *See* 58 AM. JUR. 2D *Newspapers, Periodicals, and Press Associations* § 1 (citing cases). Although these cases primarily involve newspapers that print both a paper edition and an Internet version of the print edition, that distinction does not negate the analogy to the instant case. Indeed, the Court notes that on occasion, papers that publish both a print and an internet version have a lag time between the publication of the paper edition and the updating of the internet edition. Such is not the case with the *Source*.

■ As the preceding discussion demonstrates, the *Source* possesses numerous attributes that make it a desirable vehicle for alerting defendants to cases pending against them. The Court therefore finds that the *Source* is an appropriate means of serving the specified defendants in this case by publication.